NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

STEVEN LEE TURNER, *Petitioner*.

No. 1 CA-CR 25-0571 PRPC

FILED 07-01-2026

Petition for Review from the Superior Court in Maricopa County
No. CR 1995-006212
The Honorable Chuck Whitehead, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Robert E. Prather
*Counsel for Respondent*

Ortega & Ortega PLLC, Phoenix
By Alane M. Ortega
*Counsel for Petitioner*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Andrew J. Becke joined.

---

**C A T T A N I**, Judge:

¶1 Steven Lee Turner petitions for review of the superior court's dismissal of his petition for post-conviction relief ("PCR") filed under Arizona Rule of Criminal Procedure ("Rule") 32. We grant review but deny relief.

## FACTS AND PROCEDURAL HISTORY

¶2 In 1995, the victim's body was discovered in a field beside an irrigation ditch. She had been shot multiple times, including three times in the head. Police interviewed Turner about the crime a month later. He admitting seeing the victim the day before her body was found but denied killing her. Several days after Turner's interview, his jail cellmate, C.D., told police that Turner had confessed to a murder.

¶3 The State charged Turner with first-degree murder and kidnapping. At trial, the State's case was based largely on C.D.'s account of what Turner had told him: The victim had found two guns belonging to Turner and tried to sell them back to him. Because the victim had only one of the guns, Turner and an accomplice forced the victim into the backseat of Turner's car and went looking for the person who had the second gun. Unable to find that person, Turner drove to a field and ordered the victim out of the car. The victim saw that Turner had a gun and began to run. Turner then shot the victim, and when she fell to the ground and began crawling, Turner knelt and shot her three more times. Turner dragged her body into a gully, tossed the gun into a dumpster, and later burned his clothes. According to C.D., Turner said he returned to the site shortly after the shooting and "looked up under [the victim] to see if he had dropped his [gun] clip up under her" but later found the clip in his car.

¶4 In his defense, Turner emphasized that no physical evidence or eyewitness testimony linked him to the crimes. He also stressed C.D.'s incentive to act as an informant and the possibility that C.D. fabricated the "confession" based on publicly available information.

**¶5**        A jury found Turner guilty as charged, and this court affirmed his convictions and sentences on appeal.  *State v. Turner*, 1 CA-CR 97-0401 (Ariz. App. Apr. 30, 1998) (mem. decision).  Later that year, Turner filed a PCR notice that the superior court dismissed as untimely.

**¶6**        In 2003, Turner petitioned for post-conviction DNA testing under A.R.S. § 13-4240.  The petition was not addressed until 2020; the reason for this delay is not apparent from the record.  At that time, the court granted Turner's request for DNA testing of (1) bloodstains inside Turner's vehicle, (2) bloodstains on the victim's clothing, and (3) all other items containing DNA evidence collected from Turner's car or the victim.

**¶7**        After receiving the results, Turner petitioned for relief based on newly discovered evidence under Rule 32.1(e) and ineffective assistance of counsel ("IAC") under Rule 32.1(a).[1]  Turner noted that the DNA results showed (1) no victim DNA on samples collected from Turner's vehicle, (2) an exclusion of Turner's DNA from the vast majority of samples collected from the victim's clothing (t-shirt, shorts, and bra), (3) at best inconclusive results regarding the presence of Turner's DNA on three samples from the victim's clothing, and (4) an exclusion of Turner's DNA from other samples tested, including from a semen stain on the victim's shorts and hairs found in her hand and on her clothes.  Turner thus asserted that this DNA evidence refuted trial testimony that was already unreliable and thus, if known at the time of trial, probably would have changed the verdict.  Turner further argued that his trial attorney's failure to seek independent DNA testing of the samples before trial established IAC.

**¶8**        After a two-day evidentiary hearing including expert testimony interpreting the DNA results, the superior court denied relief.  The court concluded that Turner failed to show a reasonable probability he would not have been convicted had the DNA evidence been presented at trial and thus had not shown grounds for relief based on newly discovered evidence.  Because the DNA evidence was not exculpatory, Turner's trial

---

[1]        Turner's original petition raised only the Rule 32.1(e) claim, but he sought leave to add the IAC claim, urging that this claim should be permitted because his 1998 PCR notice was improperly dismissed as untimely even though it was in fact timely filed within 30 days after the Arizona Supreme Court denied his petition for review.  *See* Ariz. R. Crim. P. 32.4(a) (1998).  The superior court granted leave to amend, and Turner's amended petition is the operative pleading.

attorney's failure to obtain the evidence was neither deficient nor prejudicial, undermining his IAC claim.

¶9          This timely petition for review followed.

## DISCUSSION

¶10          We review the superior court's ruling on a PCR petition for an abuse of discretion, a category that includes errors of law, failure to "adequately investigate the facts necessary to support its decision," or factual findings that are "clearly erroneous." *State v. Pandeli*, 242 Ariz. 175, 180, ¶¶ 3–4 (2017). Turner argues the superior court here erred by not considering relevant facts and by misapplying the law.

¶11          To merit relief based on newly discovered material facts, Turner was required to show "those facts probably would have changed the judgment or sentence." Ariz. R. Crim. P. 32.1(e). Because the trial evidence here showed limited physical contact between Turner and the victim, the superior court reasonably concluded that the absence of Turner's DNA on the victim's t-shirt, shorts, and bra or on hair and semen found on her person was unlikely to have affected the jury's determination of guilt. *Cf. State v. Hess*, 231 Ariz. 80, 82–83, ¶¶ 5, 12 (App. 2012) (concluding that the exclusion of defendant's DNA from tested samples was unlikely to affect the verdict because there was little evidence defendant had contact with the sampled areas). Trial testimony that Turner slapped the victim's face or dragged her body does not establish or suggest that Turner touched her clothing where the DNA samples were collected. And no trial evidence showed sexual contact between the two. Even if Turner moved the victim to see if the gun clip was underneath her, he could have done so without touching her clothing.

¶12          Likewise, the absence of the victim's DNA in samples taken from Turner's car does not establish a reasonable probability of a different verdict. The samples were taken from only limited portions of the backseat—pieces of the center front and left corner seat covers and a piece of upholstery from the left rear panel below the passenger-side window. More importantly, the samples were collected from bloodstained areas, and there was no evidence the victim was bleeding in the car; Turner himself later acknowledged the blood predictably belonged to him because he had been shot in the vehicle.

¶13          Turner argues the DNA evidence would have further undermined C.D.'s testimony, a lynchpin of the State's case and, in Turner's view, already unreliable. But the discrepancies in C.D.'s account were

already apparent from other trial evidence. And defense counsel emphasized those discrepancies at trial. Given the limited probability that Turner's DNA would be found on the victim's clothing or the victim's DNA in the samples from Turner's car and the fact that the jurors were already aware of the "inconsistencies and inaccuracies" on which Turner now relies, the DNA results were unlikely to meaningfully change the jury's assessment of C.D.'s credibility.

¶14         Turner asserts the court failed to adequately consider the facts underlying its decision because it did not review or rely on the trial transcripts. *See Pandeli*, 242 Ariz. at 180, ¶ 4. But the court expressly relied on the facts set forth in Turner's petition and in this court's decision on direct appeal, and Turner does not contend that those facts were inaccurate or misstated. Moreover, our independent review of the trial record confirms the superior court's assessment. *See State v. Roseberry*, 237 Ariz. 507, 508, ¶ 7 (2015) ("We will affirm a trial court's decision [denying post-conviction relief] if it is legally correct for any reason.").

¶15         Turner further argues that the superior court misapplied the law by requiring proof of innocence to prevail on his newly discovered evidence claim and by relying on inapposite case law. But the court recited the correct standard for a newly discovered evidence claim. Even if the court referenced innocence ("the absence of [Turner's] DNA does not mean he did not kill the victim"), its analysis focused on whether the DNA results likely would have changed the verdict, and our review supports its finding that Turner did not show a reasonable probability of a different outcome. *See id.* Similarly, the court did not err by citing cases in which forensic results did not exculpate the defendant because those cases (even if somewhat factually distinct) demonstrated inadequacy of new DNA evidence under sufficiently similar circumstances.

¶16         To the extent Turner also challenges dismissal of his IAC claim premised on trial counsel's failure to seek DNA testing, we likewise deny relief. Not least because independent testing risked generating results that could inculpate Turner, the decision not to seek testing and instead to emphasize the State's failure to present scientific evidence connecting Turner to the crimes was not unreasonable. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (observing that an attorney's decision not to investigate is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). Further, Turner has not shown prejudice because, as described above, the DNA results were unlikely to have impacted the jury's verdict. *See id.* at 694.

**CONCLUSION**

¶17        We grant review but deny relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR